IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEANETTE DEICHMANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| MASCHHOFF ENVIRONMENTAL, INC. ) | |
| d/b/a THE MASCHHOFFS INC., and ) | |
| TANYA JANSEN, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

COMES NOW Plaintiff, Jeanette Deichmann, by and through her attorneys, Cates Mahoney, LLC, and for her Complaint against Defendants, Maschhoff Environmental, Inc. d/b/a The Maschhoffs, Inc. and Tanya Jansen, states as follows:

**PARTIES**

1. At all times relevant herein, Jeanette Deichmann was a resident of Clinton County, State of Illinois.

2. At all times relevant herein, Defendant, Maschhoff Environmental, Inc. d/b/a The Maschhoffs, Inc. ("The Maschhoffs"), was an Illinois Corporation; was duly registered to conduct business in the State of Illinois; was conducting business in the State of Illinois; and continues to transact business in the State of Illinois, including Clinton County, Illinois.

3. Upon information and belief, at all times relevant herein, Defendant, Tanya Jansen ("Jansen"), was a resident of Washington County, State of Illinois.

4. At all times relevant herein, Defendant, The Maschhoffs, conducts business in the State of Illinois, and is an employer pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-(b).

## GENERAL ALLEGATIONS

5. At all times relevant herein, Defendant, The Maschhoffs, owned and operated as their principal place of business, a facility located in Carlyle, Clinton County, State of Illinois where it runs one of the largest pork production companies in the United States (the "Carlyle Facility").

6. At all times relevant herein, Plaintiff was working as an employee for Defendant, The Maschhoffs, at the Carlyle Facility as a Production Accounting Assistant Level II, and Defendant, The Maschhoffs, was Plaintiff's direct employer at the time of the events alleged herein.

7. At all times relevant herein, Defendant, Jansen, was Plaintiff's direct supervisor at the Carlyle Facility and was the agent of The Maschhoffs.

8. At all times relevant herein, Defendant Jansen, was employed by the Defendant, The Maschhoffs, as Supervisor of Production Accounting and was Plaintiff's direct supervisor, and had the power to directly affect the terms and conditions of her employment.

9. At all times relevant herein, Defendant Jansen, was acting within the scope of her employment with Defendant, The Maschhoffs.

## JURISDICTION & VENUE

10. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337, and 1343. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII").

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in the Southern District of Illinois.

**COUNT I**
*Violation of the Illinois Human Rights Act – Sexual Harassment*
*Jeanette Deichmann v. The Maschhoffs, Inc.*

COMES NOW Plaintiff, Jeanette Deichmann, by and through her attorneys, Cates Mahoney, LLC, and for Count I of her Complaint against Defendant, Maschhoff Environmental, Inc. d/b/a The Maschhoffs, Inc. ("The Maschhoffs"), states as follows:

12. Plaintiff hereby incorporates Paragraphs 1 through 11 herein as though fully set forth hereunder.

13. On or about October 26, 2011, Plaintiff, Jeanette Deichmann, was hired by Defendant, The Maschhoffs, to work out of the Carlyle Facility.

14. In 2018, Plaintiff began working as a Production Accounting Associate Level II for Defendant, The Maschhoffs, and Defendant Jansen was Plaintiff's immediate supervisor.

15. Beginning in December 2018, Defendant Jansen, started having sexually descriptive conversations at work, and began directing her sexual misconduct towards Plaintiff.

16. At or about this time, Defendant Jansen began confiding in Plaintiff about Jansen and her husband having marital problems.

17. At or about this time, and thereafter, while working at the Carlyle Facility, Defendant Jansen told Plaintiff about the size of her husband's penis, and described an extramarital affair that she had recently had.

18. At all times relevant herein, Plaintiff would attempt to change the subject when Defendant Jansen would make these inappropriate comments as they made Plaintiff uncomfortable. This did not deter Jansen.

19. On or about early January 2019, Defendant Jansen began contacting Plaintiff's husband, Seth Deichmann, via text messages and Facebook. Defendant Jansen would tell Seth

that she found him attractive, and asked him if he had any friends that he could introduce her to since her marriage was in apparent turmoil.

20. At or about this time, Defendant Jansen sent Seth Deichmann several nude photographs of herself, and a video that appeared to show Defendant Jansen having sex with an unidentified man.

21. At or about this time, Defendant Jansen messaged Seth Deichmann to tell him that she was attracted to Plaintiff, and wanted to have a "threesome" with him and Plaintiff.

22. Despite Seth Deichmann ignoring Defendant Jansen's inappropriate sexual comments and advances, Defendant Jansen persisted.

23. Following the foregoing events, Defendant Jansen approached Plaintiff while they were working at the Carlyle Facility, and stated that since it appeared Seth Deichmann was uninterested in a "threesome," that she and Plaintiff should just have sex together.

24. Plaintiff informed Defendant Jansen that her inappropriate sexual comments and advances were unwelcome and needed to cease immediately.

25. On or about late February 2019, Defendant Jansen requested that Plaintiff accompany her on a work-related trip out of town that would have required them to be alone together at times.

26. Plaintiff told Defendant Jansen that she was unavailable for this work trip. Plaintiff declined attending this trip because she was uncomfortable being alone with Defendant Jansen.

27. After Plaintiff told Defendant Jansen to cease making any further sexual comments and advances towards herself and her husband, Defendant Jansen's attitude towards Plaintiff became negative and hostile.

28. On or about May 17, 2019, Plaintiff was asked to come into a meeting with Defendant Jansen and her supervisor, Erika Nieman.

29. During this meeting, Plaintiff was informed by Defendant Jansen that she was receiving a verbal warning for insubordination and hostility stemming from two incidents: (a) the occurrence where Plaintiff said she was unavailable to accompany Defendant Jansen on the work-related trip, and (b) another occasion where Defendant Jansen had asked Plaintiff if she had time to join an informal meeting, and Plaintiff replied that she didn't have time as she was busy, but would still attend.

30. The aforementioned verbal warning was retaliatory in nature due to Plaintiff rejecting Defendant Jansen's sexual advances.

31. Between May 17, 2019 and May 29, 2019, Plaintiff attempted to schedule a meeting with Erika Niemann to report the aforementioned retaliation, but her requests were denied.

32. On or about May 27, 2019, Plaintiff contacted the Vice President of Human Resources for The Maschhoffs requesting a meeting, which was thereafter set for June 5, 2019.

33. On or about May 29, 2019, Defendant Jansen and Erika Nieman informed Plaintiff that she was being terminated effective immediately for insubordination.\

34. Prior to receiving the aforementioned discipline and termination of her employment from Defendant, The Maschhoffs, Plaintiff had no history of discipline throughout her seven and half years of employment.

35. Plaintiff's employment was terminated by Defendant, The Maschhoffs, by and through its agent, Defendant Jansen, in retaliation for Plaintiff's rejection of Defendant Jansen's sexual harassment and advances.

36. At no time did Plaintiff, consent to the aforementioned sexual harassment by Defendant Jansen, and at no time was any of the intentional and unlawful conduct set forth herein justified.

37. The aforementioned conduct altered the terms and conditions of Plaintiff's employment.

38. The effect of the practice(s) complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

39. The unlawful employment practices complained of above were intentional.

40. The unlawful employment practices complained of above were done with malice or with reckless indifference to the statutorily protected rights of Plaintiff.

41. At all times relevant herein, Defendant, The Maschhoffs, has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

42. At all times relevant herein, Defendant Jansen was an employee of Defendant, The Maschhoffs, within the meaning of Sections 701(f) of Title VII, 42 U.S.C. §§ 2000e(f).

43. Based on the extreme and outrageous conduct outline above, Defendant Jansen, as agent and employee of Defendant, The Maschhoffs, sexually harassed Plaintiff, and as a result, The Maschhoffs has violated Title VII of the Civil Rights Act of 1964.

44. As a direct and proximate result of the aforesaid acts, Plaintiff was discriminated against in the terms of her employment on the basis of sex by Defendant, The Maschhoffs, in violation of Title VII of the Civil Rights Act of 1964.

45. Prior to the institution of this lawsuit, Plaintiff filed a charge with the Equal Employment Opportunity Commission alleging violations of Title VII by Defendant, The Maschhoffs, and therefore, all conditions precedent to the institution of this lawsuit have been fulfilled. A copy of the Charge filed against The Maschhoffs is filed herewith as Exhibit 1. A copy of the EEOC's Notice of Right to Sue is filed herewith as Exhibit 2.

46. As a further direct and proximate result of Defendant The Maschhoffs' violation of Title VII of the Civil Rights Act of 1964, Plaintiff was forced to endure multiple acts of sexual harassment by her supervisor; Plaintiff has suffered severe emotional distress, she has lost wages and benefits she would have otherwise received, but for the sexual harassment by Defendant; and may suffer such loss of wages and benefits in the future; she has experienced severe mental anguish, depression, and emotional distress in the past and may continue to suffer the same in the future; she has suffered a loss of enjoyment of a normal life as a consequence of her emotional injuries and she has lost her ability to engage in the same kinds of normal activities, all to her damage.

WHEREFORE, Plaintiff, Jeanette Deichmann, requests that judgment be entered on her behalf against Defendant, Maschhoff Environmental, Inc. d/b/a The Maschhoffs, Inc. for actual damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), and for costs of suit and attorneys' fees.

### COUNT II
*Violation of Title VII of the Civil Rights Act of 1964 –Retaliation*
*Jeanette Deichmann v. The Maschhoffs, Inc.*

COMES NOW Plaintiff, Jeanette Deichmann, by and through her attorneys, Cates Mahoney, LLC, and for Count II of her Complaint against Defendant, Maschhoff Environmental, Inc. d/b/a The Maschhoffs, Inc. ("The Maschhoffs"), states as follows:

47. Plaintiff hereby incorporates Paragraphs 1 through 11 herein as though fully set forth hereunder.

48. On or about October 26, 2011, Plaintiff, Jeanette Deichmann, was hired by Defendant, The Maschhoffs, to work out of the Carlyle Facility.

49. In 2018, Plaintiff began working as a Production Accounting Associate Level II for Defendant, The Maschhoffs, and Defendant Jansen was Plaintiff's immediate supervisor.

50. Beginning in December 2018, Defendant Jansen, started having sexually descriptive conversations at work, and began directing her sexual misconduct towards Plaintiff.

51. At or about this time, Defendant Jansen began confiding in Plaintiff about Jansen and her husband having marital problems.

52. At or about this time, and thereafter, while working at the Carlyle Facility, Defendant Jansen told Plaintiff about the size of her husband's penis, and described an extramarital affair that she had recently had.

53. At all times relevant herein, Plaintiff would attempt to change the subject when Defendant Jansen would make these inappropriate comments as they made Plaintiff uncomfortable. This did not deter Jansen.

54. On or about early January 2019, Defendant Jansen began contacting Plaintiff's husband, Seth Deichmann, via text messages and Facebook. Defendant Jansen would tell Seth that she found him attractive, and asked him if he had any friends that he could introduce her to since her marriage was in apparent turmoil.

55. At or about this time, Defendant Jansen sent Seth Deichmann several nude photographs of herself, and a video that appeared to show Defendant Jansen having sex with an unidentified man.

56. At or about this time, Defendant Jansen messaged Seth Deichmann to tell him that she was attracted to Plaintiff, and wanted to have a "threesome" with him and Plaintiff.

57. Despite Seth Deichmann ignoring Defendant Jansen's inappropriate sexual comments and advances, Defendant Jansen persisted.

58. Following the foregoing events, Defendant Jansen approached Plaintiff while they were working at the Carlyle Facility, and stated that since it appeared Seth Deichmann was uninterested in a "threesome," that she and Plaintiff should just have sex together.

59. Plaintiff informed Defendant Jansen that her inappropriate sexual comments and advances were unwelcome and needed to cease immediately.

60. On or about late February 2019, Defendant Jansen requested that Plaintiff accompany her on a work-related trip out of town that would have required them to be alone together at times.

61. Plaintiff told Defendant Jansen that she was unavailable for this work trip. Plaintiff declined attending this trip because she was uncomfortable being alone with Defendant Jansen.

62. After Plaintiff told Defendant Jansen to cease making any further sexual comments and advances towards herself and her husband, Defendant Jansen's attitude towards Plaintiff became negative and hostile.

63. On or about May 17, 2019, Plaintiff was asked to come into a meeting with Defendant Jansen and her supervisor, Erika Nieman.

64. During this meeting, Plaintiff was informed by Defendant Jansen that she was receiving a verbal warning for insubordination and hostility stemming from two incidents: (a) the occurrence where Plaintiff said she was unavailable to accompany Defendant Jansen on the work-related trip, and (b) another occasion where Defendant Jansen had asked Plaintiff if she had time

to join an informal meeting, and Plaintiff replied that she didn't have time as she was busy, but would still attend.

65. The aforementioned verbal warning was retaliatory in nature due to Plaintiff rejecting Defendant Jansen's sexual advances.

66. Between May 17, 2019 and May 29, 2019, Plaintiff attempted to schedule a meeting with Erika Niemann to report the aforementioned retaliation, but her requests were denied.

67. On or about May 27, 2019, Plaintiff contacted the Vice President of Human Resources for The Maschhoffs requesting a meeting, which was thereafter set for June 5, 2019.

68. On or about May 29, 2019, Defendant Jansen and Erika Nieman informed Plaintiff that she was being terminated effective immediately for insubordination.\

69. Prior to receiving the aforementioned discipline and termination of her employment from Defendant, The Maschhoffs, Plaintiff had no history of discipline throughout her seven and half years of employment.

70. Plaintiff's employment was terminated by Defendant, The Maschhoffs, by and through its agent, Defendant Jansen, in retaliation for Plaintiff's rejection of Defendant Jansen's sexual harassment and advances.

71. At no time did Plaintiff, consent to the aforementioned sexual harassment by Defendant Jansen, and at no time was any of the intentional and unlawful conduct set forth herein justified.

72. The aforementioned conduct altered the terms and conditions of Plaintiff's employment.

73. The effect of the practice(s) complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

74. The unlawful employment practices complained of above were intentional.

75. The unlawful employment practices complained of above were done with malice or with reckless indifference to the statutorily protected rights of Plaintiff.

76. At all times relevant herein, Defendant, The Maschhoffs, has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

77. At all times relevant herein, Defendant Jansen, was an employee of Defendant, The Maschhoffs, within the meaning of Sections 701(f) of Title VII, 42 U.S.C. §§ 2000e(f).

78. As a direct and proximate result of the conduct outlined above, Plaintiff was discriminated against in the terms of her employment in retaliation for Plaintiff opposing the unlawful employment practice of sexual harassment, in violation of Title VII of the Civil Rights Act of 1964.

79. Prior to the institution of this lawsuit, Plaintiff filed a charge with the Equal Employment Opportunity Commission alleging violations of Title VII by Defendant, The Maschhoffs, and therefore, all conditions precedent to the institution of this lawsuit have been fulfilled. A copy of the Charge filed against The Maschhoffs is filed herewith as Exhibit 1. A copy of the EEOC's Notice of Right to Sue is filed herewith as Exhibit 2.

80. As a further direct and proximate result of Defendant, The Maschhoffs' violation of Title VII of the Civil Rights Act of 1964, Plaintiff has suffered severe emotional distress, she has lost wages and benefits she would have otherwise received, but for the retaliation by

Defendant; and may suffer such loss of wages and benefits in the future; she has experienced severe mental anguish, depression, and emotional distress in the past and may continue to suffer the same in the future; she has suffered a loss of enjoyment of a normal life as a consequence of her emotional injuries and she has lost her ability to engage in the same kinds of normal activities, all to her damage.

WHEREFORE, Plaintiff, Jeanette Deichmann, requests that judgment be entered on her behalf against Defendant, Maschhoff Environmental, Inc. d/b/a The Maschhoffs, Inc., for actual damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), and for costs of suit and attorneys' fees.

## COUNT III
### *Intentional Infliction of Emotional Distress*
### *Jeanette Deichmann v. Tanya Jansen*

COMES NOW Plaintiff, Jeanette Deichmann, by and through her attorneys, Cates Mahoney, LLC, and for Count III of her Complaint against Defendant, Tanya Jansen ("Jansen"), states as follows:

81. Plaintiff hereby incorporates Paragraphs 1 through 11 herein as though fully set forth hereunder.

82. On or about October 26, 2011, Plaintiff, Jeanette Deichmann, was hired by Defendant, The Maschhoffs, to work out of the Carlyle Facility.

83. In 2018, Plaintiff began working as a Production Accounting Associate Level II for Defendant, The Maschhoffs, and Defendant Jansen was Plaintiff's immediate supervisor.

84. Beginning in December 2018, Defendant Jansen, started having sexually descriptive conversations at work, and began directing her sexual misconduct towards Plaintiff.

85. At or about this time, Defendant Jansen began confiding in Plaintiff about Jansen and her husband having marital problems.

86. At or about this time, and thereafter, while working at the Carlyle Facility, Defendant Jansen told Plaintiff about the size of her husband's penis, and described an extramarital affair that she had recently had.

87. At all times relevant herein, Plaintiff would attempt to change the subject when Defendant Jansen would make these inappropriate comments as they made Plaintiff uncomfortable. This did not deter Jansen.

88. On or about early January 2019, Defendant Jansen began contacting Plaintiff's husband, Seth Deichmann, via text messages and Facebook. Defendant Jansen would tell Seth that she found him attractive, and asked him if he had any friends that he could introduce her to since her marriage was in apparent turmoil.

89. At or about this time, Defendant Jansen sent Seth Deichmann several nude photographs of herself, and a video that appeared to show Defendant Jansen having sex with an unidentified man.

90. At or about this time, Defendant Jansen messaged Seth Deichmann to tell him that she was attracted to Plaintiff, and wanted to have a "threesome" with him and Plaintiff.

91. Despite Seth Deichmann ignoring Defendant Jansen's inappropriate sexual comments and advances, Defendant Jansen persisted.

92. Following the foregoing events, Defendant Jansen approached Plaintiff while they were working at the Carlyle Facility, and stated that since it appeared Seth Deichmann was uninterested in a "threesome," that she and Plaintiff should just have sex together.

93. Plaintiff informed Defendant Jansen that her inappropriate sexual comments and advances were unwelcome and needed to cease immediately.

94. On or about late February 2019, Defendant Jansen requested that Plaintiff accompany her on a work-related trip out of town that would have required them to be alone together at times.

95. Plaintiff told Defendant Jansen that she was unavailable for this work trip. Plaintiff declined attending this trip because she was uncomfortable being alone with Defendant Jansen.

96. After Plaintiff told Defendant Jansen to cease making any further sexual comments and advances towards herself and her husband, Defendant Jansen's attitude towards Plaintiff became negative and hostile.

97. On or about May 17, 2019, Plaintiff was asked to come into a meeting with Defendant Jansen and her supervisor, Erika Nieman.

98. During this meeting, Plaintiff was informed by Defendant Jansen that she was receiving a verbal warning for insubordination and hostility stemming from two incidents: (a) the occurrence where Plaintiff said she was unavailable to accompany Defendant Jansen on the work-related trip, and (b) another occasion where Defendant Jansen had asked Plaintiff if she had time to join an informal meeting, and Plaintiff replied that she didn't have time as she was busy, but would still attend.

99. The aforementioned verbal warning was retaliatory in nature due to Plaintiff rejecting Defendant Jansen's sexual advances.

100. Between May 17, 2019 and May 29, 2019, Plaintiff attempted to schedule a meeting with Erika Niemann to report the aforementioned retaliation, but her requests were denied.

101. On or about May 27, 2019, Plaintiff contacted the Vice President of Human Resources for The Maschhoffs requesting a meeting, which was thereafter set for June 5, 2019.

102. On or about May 29, 2019, Defendant Jansen and Erika Nieman informed Plaintiff that she was being terminated effective immediately for insubordination.\

103. Prior to receiving the aforementioned discipline and termination of her employment from Defendant, The Maschhoffs, Plaintiff had no history of discipline throughout her seven and half years of employment.

104. Plaintiff's employment was terminated by Defendant, The Maschhoffs, by and through its agent, Defendant Jansen, in retaliation for Plaintiff's rejection of Defendant Jansen's sexual harassment and advances.

105. At no time did Plaintiff, consent to the aforementioned sexual harassment by Defendant Jansen, and at no time was any of the intentional and unlawful conduct set forth herein justified.

106. The acts complained of above were intentional.

107. Based on the extreme and outrageous conduct outlined above, Defendant Jansen, intentionally and recklessly intended to cause Plaintiff to suffer severe emotional distress, or should have known that such outrageous conduct would cause Plaintiff to suffer from severe emotional distress.

108. At all times relevant herein, Defendant Jansen's actions amounted to willful and wanton misconduct and/or a reckless disregard for the health and safety of Plaintiff.

109. As a direct and proximate result of Defendant Jansen's intentional and reckless conduct, and the multiple acts of sexual harassment and retaliation upon Plaintiff by Defendant Jansen, Plaintiff has suffered severe emotional distress, she has lost wages and benefits she would

have otherwise received, but for the sexual harassment and retaliation by Defendant Jansen; and may suffer such loss of wages and benefits in the future; she has experienced severe mental anguish, depression, and emotional distress in the past and may continue to suffer the same in the future; she has suffered a loss of enjoyment of a normal life as a consequence of her emotional injuries and she has lost her ability to engage in the same kinds of normal activities, all to her damage.

WHEREFORE, Plaintiff, Jeanette Deichmann, requests that judgment be entered on her behalf against Defendant, Tanya Jansen, for actual damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), for punitive damages, and for costs of suit.

Respectfully Submitted,

By: \_\_\_\_/s/ Chad M. Mooney_____
Chad M. Mooney, #6311237
Ryan J. Mahoney #6290113
CATES MAHONEY, LLC
216 West Pointe Drive, Suite A
Swansea, IL  62226
Telephone:	618-277-3644
Facsimile:	618-277-7882
Email:		cmooney@cateslaw.com
		rmahoney@cateslaw.com
***Attorneys for Plaintiff***